Galen T. Shimoda (Utah Bar No. 18094)
**Shimoda & Rodriguez Law, PC**
1414 E. Murray Holladay Road
Holladay UT 84117
Telephone: (833) 201-0213
Facsimile: (916) 760-3733

Attorneys for Plaintiff Craig Branum

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CRAIG BRANUM,<br><br>　　Plaintiff,<br><br>　　vs.<br><br>SWIRE COCA-COLA, USA, a DBA; SWIRE PACIFIC HOLDINGS, INC., a Delaware Corporation; and DOES 1 to 100, inclusive,<br><br>　　Defendants. | Case No. 2:23-cv-00846<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **Disability Discrimination in Violation of ADA**<br>2. **Retaliation in Violation of ADA**<br>3. **Failure to Accommodate in Violation of ADA**<br><br>**JURY TRIAL DEMANDED** |

　　Plaintiff Craig Branum ("Plaintiff") hereby files this Complaint against Defendant, Swire Coca-Cola, USA, a DBA; Swire Pacific Holdings, Inc.; a Delaware Corporation; and DOES 1 to 100, inclusive (hereinafter all collectively referred to as "Defendant"). On information and belief, Plaintiff alleges the following:

## INTRODUCTION

　　1.　　This is a lawsuit brought by Plaintiff for Defendant's violation of the Americans with Disabilities Act ("ADA") by discriminating against Plaintiff for his disability, failing to provide reasonable accommodations, and failing to engage in an interactive process with Plaintiff.

2. The United States District Court for the Central District of Utah has subject matter jurisdiction in this matter pursuant to 28 U.S.C section 1331 to determine alleged violations of the Americans with Disabilities Act (42 U.S.C. section 12101 *et al.*) ("ADA").

3. Venue is proper pursuant to 28 U.S.C. section 1391(b)(1) because substantial part of the events or omissions giving rise to the claims occurred in this district.

4. The EEOC issued its Right to Sue on September 1, 2023. Plaintiff has filed this lawsuit within the requisite time period.

## **PARTIES**

5. Plaintiff Craig Branum is an individual over the age of eighteen (18) and is a resident of the State of Utah.

6. On information and belief, Plaintiff alleges, Defendant Swire Coca-Cola, USA, is now and/or at all times mentioned in this Complaint, a DBA, and the owner and operator of an industry, business, and/or facility doing business in the State of Utah with the address of 12634 South 265 West Draper Utah, 84020.

7. On information and belief, Plaintiff alleges, Defendant Swire Pacific Holdings, Inc., is now and/or at all times mentioned in this Complaint, a Delaware Corporation and the owner and operator of an industry, business, and/or facility doing business in the State of Utah.

8. Defendants DOES 1 through 100 are affiliates, subsidiaries and related entities and the alter egos of each of the other Defendants named herein, corporate or otherwise, who participated in and are liable for the actions herein alleged. Plaintiff will seek to amend this Complaint to allege the true names and capacities of these Doe Defendants when they are ascertained. At all times mentioned herein, each Defendant was the agent or employee of each of the other Defendants and was acting within the course and scope of such agency or employment. The Defendants are jointly and severally liable to Plaintiff.

9. At all times mentioned herein, each Defendant was the agent or employee of each of the other Defendants and was acting within the course and scope of such agency or employment. The Defendants are jointly and severally liable to Plaintiff.

10. Defendants, and each of them, are now and/or at all times mentioned in this Complaint were members of and/or engaged in a joint employment, joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuance of said joint employment, joint venture, partnership and common enterprise.

11. Defendants, and each of them, now and/or at all times mentioned in this Complaint approved, ratified, acquiesced, aided or abetted the acts and omissions alleged in this Complaint.

12. Defendants proximately caused Plaintiff to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

## GENERAL ALLEGATIONS

13. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 12 as though fully set forth herein.

14. Plaintiff began working for Defendant in 2004 and worked as a Corporate Fleet Safety and Compliance Specialist since approximately 2018.

15. On or about February 28, 2022, Plaintiff woke up and could not move his left hand from the wrist to the tip of his fingers. Plaintiff immediately sought treatment and evaluation at Ogden Regional Medical Center's Emergency Room. His emergency physician provided Plaintiff with a doctor's note excusing Plaintiff from work from February 28, 2022 to March 4, 2022. Plaintiff sent a photo of the doctor's note to his supervisor, Brandon Wiseman. Mr. Wiseman verified receipt of the text by responding, "Sending good vibes. Let us know if you need anything. That is terrible!"

16. Plaintiff had already procured vacation time for the week of March 7, 2022, to March 13, 2022, that had been approved by his supervisor. On March 3, 2022, Mr. Wiseman texted Plaintiff and confirmed that Plaintiff had a pre-planned vacation week on the week of March 7, 2022 to March 13, 2022 for his injury.

17. On or about March 15, 2022, Mr. Wiseman suggested that Plaintiff call Human Resources. Prior to this, Plaintiff believed that Mr. Wiseman had approved his absenteeism due to his injury. Mr. Wiseman then texted the telephone number and contact person at Human Resources. Plaintiff immediately called Jessica Berdaguer, Leave & Accommodation Partner in Human Resources, to confirm that all required paperwork had been turned in. On or about March 16, 2022, Plaintiff

informed Mr. Wiseman that Ms. Berdaguer Human Resources had not called him back. Mr. Wiseman then offered to message Ms. Berdaguer, asking her to contact Plaintiff. Plaintiff accepted that offer. On March 16, 2022, Plaintiff confirmed to Mr. Wiseman and to Ms. Berdaguer that he was working on getting the FMLA paperwork to Defendant.

18. On March 16, 2022, Mr. Wiseman texted Plaintiff, "Do you want to take a sick day today?" This further assured Plaintiff that he had not acquired any unauthorized absenteeism. Plaintiff confirmed that he would take another sick day and that he would log it into their attendance program, DayForce. Mr. Wiseman concluded the conversation with, "Perfect. Thank you."

19. On or about March 17, 2022, Plaintiff's medical provider submitted FMLA paperwork only for the period of April 9, 2022 to June 18, 2022. Plaintiff was unaware that his physician had only submitted FMLA paperwork covering the period of April 9, 2022 to June 18, 2022. Plaintiff was under the assumption that the paperwork covered his absenteeism from the beginning of his leave on February 26, 2022.

20. Again, on March 17, 2022, Mr. Wiseman contacted Plaintiff asking, "Sick day today?" Plaintiff confirmed that he had finally spoke with Ms. Berdaguer about his inability to perform all job duties and Plaintiff confirmed that his physician had submitted the FMLA documents. Plaintiff also requested a sick day for March 18, 2022. Mr. Wiseman thanked Plaintiff for the update.

21. On March 22, 2022, Plaintiff informed Mr. Wiseman that he was having a hard time finalizing the FMLA approval due to the third-party company that Defendant had hired to manage Plaintiff's FMLA. The third party company had not communicated well with Plaintiff.

22. On March 23, 2022, Plaintiff submitted another sick day request on DayForce. Mr. Wiseman responded by text, **"Hi Craig. Just got your leave request on DayForce and approved it. No need to call out on a daily basis. I am hoping you get to feeling well"** (emphasis added). This once again assured Plaintiff that he had complied with Defendant's policies and had not incurred any unauthorized absences. Plaintiff understood that Defendant had accommodated his multiple requests for time off due to his paralysis.

23. Plaintiff had utilized his accrued sick and vacation time up to the company's eventual approval of FMLA leave on April 8, 2022.

24. Plaintiff was on approved FMLA leave from April 8, 2022 to July 1, 2023. Mr. Branum returned to work on July 5, 2022.

25. On July 6, 2022, Defendant's employees, Bradley Patterson and Cari Van Veegaete, called Plaintiff to inform him of his termination. Defendant said that Plaintiff's requested medical leave from February 28, 2022, to April 8, 2022, had been denied "due to the absence of medical paperwork from your medical provider." Defendant asserted that on March 31, 2022, Plaintiff received a request *via* email (to his work e-mail address) providing Plaintiff with an opportunity to provide the necessary required paperwork by April 7, 2022. Defendant terminated Plaintiff citing "unprotected leave."

26. Plaintiff did not see the request for additional paperwork sent on March 31, 2022, since they were sent to his work email address, which Plaintiff was not checking regularly since he was on medical leave. Defendant never contacted Plaintiff to ask for further documentation or tell him that his job was in jeopardy. Mr. Wiseman had approved this leave of absence for the period of February 28, 2022, to March 31, 2022, and was well aware of Plaintiff's disability and serious health condition.

27. During this termination meeting with Mr. Patterson and Ms. Veegaete, Plaintiff attempted to provide the required information and pled with Defendant to allow him to provide documentation relating to his absences that were approved by Mr. Wiseman. Plaintiff expressly said that he could get records from his doctors saying that he qualified for medical leave. Plaintiff believed that this was a simple accommodation request to show that he had been disabled and the leave was necessary.

28. Notwithstanding, Mr. Patterson replied that the company was going to move forward with Plaintiff's termination because their records indicated that Plaintiff had missed the deadline and that there were strict guidelines under FMLA. Defendant did not allow Plaintiff to provide the requested documentation nor to explain himself. Defendant concluded the conversation by stating that "you had over a month of unprotected leave where we didn't have any certification or responses to that extended deadline." Plaintiff again expressed that he did not know of any request for further information and was not notified of any deadline as Plaintiff's supervisor had already approved all of his time off for this period. Defendant summarily terminated Plaintiff's 18 years of employment based on "unprotected leave".

29. In fact, Plaintiff had requested time off through his supervisor. While he never used magic words like "Americans with Disability Act" or "reasonable accommodation", Plaintiff did seek an accommodation in the form of leave so he could return to work, which he did. Defendant utterly failed to consider these requests as a "reasonable accommodation" making his termination illegal.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
### (As to all Defendants)

30. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 29 as though fully set forth herein.

31. Defendant is an "employer" as defined in the ADA. 42 U.S.C. § 12111(5); *see also* 29 C.F.R. § 1630.2(e).

32. It is an unlawful employment practice to discriminate against an employee based on that employee's disabilities under the ADA. *See* 42 U.S.C. § 12112(a). The ADA defines a "disability" as a physical or mental impairment that "substantially limits one or more of the major life activities of such individual," such as caring for oneself, performing manual tasks, and operation of a major bodily function. *See* 29 C.F.R. §§ 1630.2(g)-(i).

33. As a result of an injury to Plaintiff's radial nerve at his upper left arm and weakness of the left wrist that radiated to his arm and hand, Plaintiff had several weeks of evaluations, tests and months of rehabilitation. During his recovery, Plaintiff could not use his left arm for an extended period of time. Plaintiff also was required to wear a wrist brace until his range of motion improved. Plaintiff was advised that fine motor function of the left hand might impact keyboarding, driving, eating, exercising, working, and many other daily activities, even with wrist stabilization (wrist brace). Plaintiff also was advised that his wrist function was expected to improve but no timeline could be ascertained for possible rehabilitation to full function.

34. Based on Plaintiff's actual, record of, and/or regarded disability, Defendant, through their agents and employees, engaged in a pattern and practice of unlawful and intentional disability discrimination in violation of the ADA in connection with the terms and conditions of Plaintiff's

employment.

35.   As a direct and proximate result of the willful, knowing, and intentional discrimination against Plaintiff, and the failure to act by Defendant, Plaintiff suffered damages legally caused by the Defendant's acts as stated in the section below entitled "DAMAGES," which is incorporated herein to the extent pertinent as if set forth here in full.

36.   Defendant's acts alleged herein show that Defendant engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of Plaintiff.

## SECOND CAUSE OF ACTION
## RETALIATION  IN VIOLATION OF THE ADA
### (As to All Defendants)

37.   Plaintiff incorporates by reference and re-alleges paragraphs 1 through 36 as though fully set forth herein.

38.   Under the ADA, it is unlawful for an employer to retaliate against an employee for requesting an accommodation based on a reasonable, good-faith belief.   42 U.S.C. § 12203; *see also Standard v. A.B.E.L. Services, Inc.*, 161, F3d 1318, 1328 (11th Cir. 1998); *Coons v. Secretary of U.S. Dept. of Treasury*, 3883 F.3d 879, 887 (9th Cir. 2004).

39.   To establish a prima facie case of retaliation under the ADA, the Plaintiff must establish that: (1) he engaged in a protected activity; (2) he was subject to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action.

40.   Plaintiff had requested an accommodation in the form of finite leave of absences during the period of February 28, 2022 to March 31, 2022.  Defendant had approved this time off and used Plaintiff's accrued sick and vacation time.  Defendant then terminated Plaintiff even though he had requested time off for his disability.  This was retaliation in violation of the ADA.

41.   Plaintiff suffered damages, which were the direct and proximate result of Defendant's retaliatory actions which violated Plaintiff's rights under the FMLA, as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

42. Defendant's acts alleged herein show that Defendant engaged in a discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of Plaintiff.

### THIRD CAUSE OF ACTION
### FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA
### (As to All Defendants)

43. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 42 as though fully set forth herein.

44. Defendant, at all times material herein, was an employer subject to the requirements of the ADA and had a duty to reasonably accommodate qualified individuals with disabilities. *See* 42 U.S.C. § 12111(9)(B); 42 U.S.C. § 12112(b)(5)(A); *see also Exby-Stolley v. Bd. of Cnty. Commissioners,* 979 F.3d 784, 795 (10th Cir. 2020); *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1169 (10th Cir. 1999) (an employer's affirmative obligation to make a reasonable accommodation is an unvarnished obligation.).

45. Defendant approved Plaintiff's requested time off from February 28, 2022, to April 7, 2022, due to Plaintiff's disability. Plaintiff stayed within continual communication with Defendant. Defendant provided this leave as an accommodation to Plaintiff. However, Defendant then terminated Plaintiff in violation of this accommodation already approved and provided.

46. Plaintiff suffered damages, which were the direct and proximate result of Defendant's failure to reasonably accommodate Plaintiff's disability, as stated in the section below entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

47. Defendant's aforementioned acts in failing to reasonably accommodate Plaintiff's disability were wanton, willful, intentional, malicious, and showed a reckless disregard for the rights and sensibilities of Plaintiff. As such, punitive damages are warranted against Defendant in order to punish and make an example of its actions.

# DAMAGES

WHEREFORE Plaintiff requests relief as follows:

1. A jury trial;

   As to the First, Second, and Third Causes of Action:

   a. For compensatory damages, including future pecuniary loss, emotional pain and suffering, inconvenience, loss of enjoyment of life, and other pecuniary losses;

   b. For injunctive relief in the form of backpay, front pay, reinstatement, and any other relief as the court finds appropriate. *See Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1229-30 (10th Cir. 1997);

   c. For a money judgment for backpay and front pay, according to proof;

   d. For an award of punitive damages, according to proof;

   e. For reasonable attorneys' fees and costs pursuant to 42 U.S.C. sections 12117(a), 12133, 2000e-5(k); 29 U.S.C. § 794a(b);

2. For such other and further relief as this Court may deem just and proper, including, but not limited to:

   a. Special and general damages;

   b. Attorney's fees and costs; and

   c. Interest.

Dated:  November 17, 2023            **Shimoda & Rodriguez Law, PC**


                                     /s/ Galen T. Shimoda
                                     Attorney for Plaintiff